Stephany et ux., Appellants, *v.* Equitable Gas Company et al.

Argued March 23, 1943. Before MAXEY, C. J.; DREW, LINN, STERN, PATTERSON, PARKER and STEARNE, JJ.

*Robert H. Braun, Jr.,* with him *James P. Ifft, Jr.,* for appellants.

*Paul J. Winschel,* with him *T. W. Pomeroy, Jr., John G. Wayman* and *Reed, Smith, Shaw & McClay,* for appellee, Equitable Gas Co.

*J. Roy Dickie,* of *Dickie, Robinson & McCamey,* for appellee, Trefaller.

OPINION BY MR. JUSTICE PARKER, April 19, 1943:

In this action in trespass to recover damages to property alleged to have been occasioned by explosion of natural gas, the court below refused to take off a compulsory nonsuit and plaintiffs have appealed. We are all of the opinion that viewing the evidence in a light most favorable to plaintiffs they failed to show any negligence upon the part of either defendant.

On the morning of February 25, 1936, one Robert Heape, who rented part of a double garage from defendant Trefaller, stepped on the starter of his car while in that garage when an explosion occurred which practically leveled the garage and did much damage to property in the vicinity including the dwelling and garage of plaintiffs. The rear of Trefaller's garage was located within a few inches of the side of plaintiffs' garage. An investigation made after the exposion disclosed a leak in a gas pipe under the cement floor of Trefaller's garage. We will assume for the sake of argument that the leak existed before the explosion.

Plaintiff husband testified that sometime before the explosion he had a convertible gas furnace installed in

his house by defendant gas company and that in November, 1935, he noticed the odor of gas in the rear of his basement and at his garage. He thought perhaps it came from the furnace and notified the gas company. A representative of that company immediately made tests and determined that there were no leaks in plaintiffs' gas pipes. In December plaintiff husband again notified the gas company that he detected the odor of gas and insisted that it remove the furnace, which it did. At various times prior to the explosion he noticed the odor of gas in the vicinity of his garage but he did not testify that he called the gas company's attention to the presence of gas at that location.

John Williams, who lived in the second house south of that of plaintiffs, testified that he smelled gas in the neighborhood prior to explosion and that he thought the odor came from the Atlantic Refining Company. He admitted that he did not have any discussion about it with any employee of the gas company.

This was not sufficient to charge the gas company with negligence. Negligence upon the part of the defendant cannot be predicated upon the mere showing of an explosion or the happening of the accident. Plaintiffs in order to recover were bound to produce competent evidence showing wherein defendant failed in its duty and that that breach of duty was the cause of plaintiffs' loss. "In a case like this negligence is never presumed from the mere happening of the accident. He who alleges it must affirmatively prove it, or point to such circumstances as naturally and reasonably lead to the conclusion of carelessness on the part of the accused as the proximate cause of the occurrence which resulted in the injuries complained of": *Greed v. Manufacturers' L. & H. Co.*, 238 Pa. 248, 251, 86 A. 95.

It is a critical factor in this case that there is not a scintilla of evidence that there was any defect in the lines or mains of the Equitable Gas Company which defect contributed in any respect to the accident. Plain-

tiffs claim to have shown that the leak which caused the explosion was in the private line of defendant Trefaller. While such fact is not controlling there is found running through the cases a distinction between the responsibilities of a distributor of natural gas in those cases where the leak is in the lines of the company (*Heh v. Consolidated Gas Co.*, 201 Pa. 443, 50 A. 994; *Shirey v. Consumers' Gas Co.*, 215 Pa. 399, 64 A. 541) and where the leak is in a line installed, controlled and maintained by the consumer or patron (*Windish v. Peoples Natural Gas Co.*, 248 Pa. 236, 93 A. 1003; *Greed v. Manufacturers' L. & H. Co.*, supra; *Hanley v. Peoples Natural Gas Co.*, 325 Pa. 6, 188 A. 157.) In the first situation the rule is "that natural gas companies are held to a degree of care which is commensurate with the dangerous character of the agency which is handled. The measure of care is not that of an insurer to every one who sustains loss by reason of gas escaping and exploding, but it is liable for an explosion where it knew or by the exercise of ordinary care should have known of the defect in its pipes or mains": *Hartman v. Citizens Natural Gas Co.*, 210 Pa. 19, 21, 59 A. 315. A gas company has not performed its full duty if it merely installs proper lines and fixtures, but it is required to maintain them. This entails inspection from time to time and the company must be on the lookout for conditions incident to natural wear and tear.

As to conditions arising from defects in the lines of consumers the responsibilities of the gas company are different for there it is the duty of the consumer to see that his lines are maintained in serviceable condition. The company knows that it is dealing with a dangerous agency and if it knows or should have known that the consumer's lines are not safe it is its duty to require the lines to be repaired or else to shut off the gas at the curb: *Windish v. Peoples Natural Gas Co.*, supra, p. 240. If it does not have such knowledge and there is no reason why it should have known that fact, it is the consumer and

not the distributor who is responsible. The responsibility of the gas company arises from knowledge of a dangerous condition and not by reason of the condition.

The company had no notice of the defect which caused the accident or that the odor of gas had been smelled on the premises of Trefaller, and there is not any circumstance from which it may be inferred that it should have known that fact. The complaint registered with the company had reference to the operation of a furnace in a neighbor's house. His lines were carefully examined and there were no leaks and it does not now appear that there were in fact leaks there. There was no evidence that any complaint was made to the gas company after the furnace was removed. Such information did not warrant the gas company in turning off all the gas in the neighborhood. The evidence is insufficient and is ruled by the principles laid down in *Windish v. Peoples Natural Gas Co.,* supra.

There is an utter lack of evidence showing negligence upon the part of Trefaller. Proof of the accident and even that it is now known that it was due to escaping gas was not sufficient. Plaintiffs produced uncontradicted testimony showing that neither Trefaller nor his tenant had ever smelled gas in the vicinity of Trefaller's garage. There was no testimony that any other person had detected the odor there. The fact that Trefaller learned after the explosion that he had consumed more gas during February than in previous months was of no probative value. This information came to his attention too late and it may well have been that the extra amount of gas consumed was due to colder weather in February. The result is that the jury were left in the dark as to the nature of the leak and its exact location and they were given no other facts from which negligence could be inferred.

Judgment affirmed at the cost of the appellants.